May it please the court, Jennifer Uweda on behalf of the appellant Armando Coronado, your honors, may I reserve two minutes in rebuttal, please? That's your full time, so when it says two, sit down. Thank you, your honors. Unless you're answering a question. Of course, your honor. In other words, you may not get the rebuttal if we're giving you questions. Yes, your honors. Purposeful, violent, and aggressive conduct. That is what BEGAE requires a statute to criminalize in order for it to be similar in kind to the enumerated offenses under the residual clause. The statute in this case, California Penal Code Section 246.3, does not fall under the residual clause for two reasons. First, Section 246.3 does not criminalize purposeful, violent, and aggressive conduct. It criminalizes gross negligence. And second, purposeful conduct does not include all intentional or acts that are just done intentionally. Intentional conduct, purposeful conduct means intentional conduct that purposefully creates a serious potential risk of physical injury to another. Can I, this is the most complicated area. Yes, your honor. I don't have the mens rea for it. So to bring it to the statute itself, because BEGAE, I was struck by Justice Breyer's constant reference to distinguishing the DUI from a use of a weapon. Well, here we have a use of a weapon. I mean, this isn't driving a car in a reckless manner with a drunk. This is firing a gun. Okay, so, and there, as the government argues, there's the willful aspect of pulling the trigger. But I take your point that the question is, is the mens rea of the overall crime purposeful or grossly negligent? Well, what it says is willfully discharges the firearm, discharges the gun in a grossly negligent manner. And it goes on. It says which could result in injury or death to a person. So why isn't shooting the gun into the air, which is the motivating, apparently the motivating circumstance for the statute, why isn't going out and shooting the gun into the air in a grossly negligent manner, why doesn't that amount to purposefully putting people at risk of harm or injury, injury or death? Well, I think there's two answers to your question, Your Honor. The first is the key to analyzing the statute is asking what does the statute criminalize? Does it criminalize the act of intentionally discharging the firearm, or does it criminalize the manner in which it's done, which is grossly negligent, which could cause a risk of injury? The California legislature, the California Supreme Court, as well as the California jury instructions all indicate that the statute criminalizes the gross negligence behavior and not the intentional discharging of a firearm. And that makes sense because simply in terms of the statute. You're not answering my question. It's the grossly negligent manner which is likely a result in injury or creates, it could result in injury or death to the person. So you're abstracting it a bit. Come back to my question, which is it's not dissociated from, you know, we're talking about firing a gun, okay? And so therefore firing a gun, which is in and of itself has potentially deadly consequences, if it's aimed at somebody for sure. But if it's shot in the air, why isn't it, doesn't it come within the purposeful concept if you are firing a gun into the air in a manner which could result in injury or death? Well, the statute prohibits only that the discharge be intentional. So that's the first part. And an intentional discharge, Your Honor, is not necessarily a crime in and of itself, and it does not necessarily create a serious potential risk of physical injury to another. It's only when it's done in a grossly negligent manner. And so just this intentional conduct, there's no link between the intentional conduct and it be done in a grossly negligent manner. Why isn't grossly negligent firing of a gun sufficiently purposeful to create the likelihood of injury or death? Well, I think, Your Honor, gross negligence means that the actor does not intend those consequences, does not intend to act grossly negligent, and does not know the risks of and consequences of his act. That's what makes it gross negligence. They're not purposefully creating a risk. That's correct, Your Honor. And I think that Woods made that distinction in the Seventh Circuit. There's a difference between acts that are done intentionally with a consequence that creates a serious risk of injury, whether the actor intended it or not, versus acts that are done with the purpose of creating the risk. What about if the gun had killed somebody so that you had involuntary manslaughter or something like that? Would that be the same thing in your analysis? It would. Yes, Your Honor, it would be the same. It wouldn't wind up as the same. Right. Because of the statute itself, you're saying. That's correct, and what it requires. Did you read U.S. v. Gear? I did, Your Honor. How do you distinguish that? Well, actually, Your Honor, in that case, it was a discharge of a firearm in a reckless manner. And so we still have the discharge of the firearm. But in that case, still, the circuit court, the Seventh Circuit, found that recklessness did not rise to the level of purposefulness. So it's similar in this case, although 246.3 requires a lot less. It doesn't require recklessness. It requires gross negligence, which goes back to Judge Fisher's question that a reasonable person would recognize the consequence and the risk and act differently, whereas this actor only intended to discharge the firearm, which in and of itself is not a crime and does not necessarily create any risk. And there's certainly many instances where that is legal. But because he did not recognize the risk, as a reasonable person would, that he would be violating that statute. But that doesn't necessarily bring it under the purview of Begay's analysis for purposeful conduct. And it goes back to the intentional drinking and driving. I think it might be the difference between acting stupidly in a dangerous manner, just like in a DUI offense, as opposed to acting purposefully, violently, and aggressively. Gere suggested that if the shooting had been toward standing on an overpass and shooting at cars going by, that that would satisfy Begay. Your Honor, it would be certainly closer to that. But because the actor knows the consequences and consciously and intentionally disregards them, so the knowledge of that is closer to the consequences of harming someone. I mean, so because if you're shooting at cars going by on the freeway, even if you don't intend to kill somebody, you just want to shoot at the cars, you would say that that would satisfy Begay? It might be closer to that, Your Honor. That would be purposefully creating a risk, whereas if you aim it in the air, it's different, isn't it? Correct, Your Honor, yes. Because you don't – oh, really, I didn't realize. If I shot a gun up in the air out here, I wouldn't purposefully put somebody at risk. That's a distinction that I'm glad I don't live in Arizona. If that's the case. Let me ask you another question. Have you read Mayer? Yes, Your Honor.  Well, that's a burglary case, Your Honor. And it is consistent with this rule, and that is because Begay, in formulating the rule, examined burglary, unlawful or unprivileged entry into a building with the intent to commit a crime. So you still have an intent that's directed towards doing something criminal. And in 246.3, the intent is actually towards something that is legal. It's just the manner in which it's done that is not. But Mayer really dealt with a crime that wasn't necessarily on the list, but we had to look at the risk, did we not? That's correct, Your Honor. And as I understand it, in this particular matter, everybody's agreed that the risk is a serious potential risk. We're just talking about the conduct. That's correct, Your Honor. So, again, how do you distinguish Mayer? Well, I think that still in Mayer, you still have an intent that's directed towards doing something criminal. Both have a risk, but it's whether that first part of the test, whether it's similar in terms of being purposeful. And I see that my time is up, so. We'll give you a minute on rebuttal anyway. Thank you, Your Honor. Good morning, Your Honor. Angela Sandman for the United States. Before we begin, I did want to ask if the Court received a letter that I filed yesterday based on some new Ninth Circuit law that just came down, the Terrell case? The what? Terrell, U.S. v. Terrell, or Terrell? I did not receive that. I have copies here with me. Why don't you just tell us? Go ahead. All right. I'm not going to read it right now. Right. Did you get copies? Have you received the copies? I have, Your Honor. Perhaps you could give them to the clerk and she can give them to us. Should I do that later then or now? Better later since your time is running. Okay. In Terrell, the Court found that sexual assault and two different types of burglary were violent felonies under ACCA, the Armed Career Criminal Act, and went into a significant analysis of beguiling and the purposeful violent and aggressive conduct. And notably there, the Court came to the conclusion that sexual assault, even by deception or trickery, was sufficiently violent and aggressive because of the attendant risks. In other words, because the person who is being assaulted might figure out that they're being tricked and then violence may ensue. That's true, but just on the face of it, the sexual assault is directed directly at a person. That is true. And I think that particular case is mainly not for the purposeful analysis, not as analogous to this case, but for the violent and aggressive analysis I thought it was quite on point, which is why I noted it. Well, maybe you could help us on, you know, at least me. Some of us apparently think shooting a gun into the air is not creating any known danger. Maybe a lot of people feel that way. I wouldn't want to be walking, you know, in a neighborhood where the bullets were flying into the air. But in any event, what's your distinction? Why is your, how would you say that that comes within beguiling then? Well, first of all. Shooting a gun into the air. First of all, what goes up must come down, so that is the. . . Opposed. True. And nobody get hurt. Actually, under 246.3, however, the California courts have interpreted that the potential risk that must be present for there to even be a violation of 246.3 means that the offender is in public. And, in fact, the defense has conceded that. So we do have that extra danger element there. But I think an important thing to consider here is the rationale in Begay. I understand that Begay was interpreting the violent felony definition under the Armed Career Criminals Act. But here at issue is sentencing guideline 2K2.1, and they have similar purposes. They both, the ACCA and 2K2.1, both impose an enhanced penalty for a violent offender who later possesses a gun. And, therefore, that rationale in Begay is to this case, I believe, so important, and that is would the offender later possessing a gun harm, deliberately harm a victim? The court in Begay created the. . . I didn't understand that. I'm sorry. No, the offender, so the violent offender, later possessing a gun deliberately harmed the victim. The court created, the Begay court created the test, the purposeful violent aggressive test to answer that question and to adequately create a way for courts to compare crimes that aren't enumerated crimes to the example crimes of burglary, arson, and extortion. But underlying all of that was the question, is this person going to, now that they've possessed a gun again, point the gun and pull the trigger? And I think in this case, 246.3 tells you that. We know what this particular person or any person later possessing a gun for purposes of sentencing guideline 2K2.1, felony possession or whatnot, is going to do with a gun. He's going to shoot it. He willfully discharged a firearm in a grossly negligent manner. He's already done that in the past. He is exactly the person that should be, should have an enhanced sentence if he again possesses a gun. Just like someone who's committed burglary or someone who's committed arson, the violent, the firearm involvement in 246.3 is especially telling. But don't you believe, and I guess these are my biggest problems that I think I have to overcome to buy your argument. If I'm suggesting in my prior decisions, not written by me, but nonetheless written by me because I have to enforce them, that recklessness does not show the appropriate intent or, if you will, recklessness does not show the appropriate purposeful, violent, aggressive conduct, how do I suggest then that gross negligence does? I think under this particular statute, I think if we were dealing with the reckless discharge of a firearm in a grossly negligent manner, the government may have more of a problem with this case. But I guess what the defendant is saying is you can't fire a firearm without some intent, so we're really looking at what else was to be proven under the statute. In other words, you've got to prove the unlawfully discharged. They did it intentionally, but what the defense is focusing on, that you also do it in a grossly negligent manner. It would seem to me that one could say from our case law that even if you did so in a reckless manner, it would not be the type of felony you want it to be. Well, first of all, Your Honor, I do think there is a difference, that a gun can be discharged recklessly. You take it out of your pocket, you're careless with it, you drop it on the ground, you throw it around. There are many ways that a firearm can be discharged recklessly, and potentially then maybe the offender shouldn't later be subject to a higher sentence because of that prior conviction. But here you've got an intentional discharge that even the defense admits is at least shooting a gun up in the air. I don't get it, because if you get behind the wheel of a car, having intentionally consumed a whole lot of alcohol, and you drive it, and you drive it on the street and you know there are other cars coming, and you know that there are going to be other cars coming at you, that there are going to be people crossing the street, and you may be acting in a grossly negligent manner and creating a big risk, and yet Begay seems to say, well, that's not this purposeful kind of conduct. And the district court in this case, it seemed to me, focused on the fact that it was a gun, and said that that is very important. But I'm not sure that given Begay that you can say, well, you seem to be making that distinction too, and I'm not sure I understand it. Why is a gun in itself different from a car moving 60 miles an hour in a crowded area? And the government feels that the difference there is, one, the legislature went out of their way to criminalize intentional discharge of a firearm, so purposeful conduct, but two, it is different from, in other words, DUI has no intent element whatsoever. And here we've got an intent element, no reckless element, it's an intention. You have to have an intent to drive a car. Certainly. And I think the other issue is the rationale behind Begay. Again, the reason the test was created, the concern is who later possessing a gun is going to deliberately point it and pull the trigger. Someone who has driven drunk before, there's sort of a disconnect there between their tendencies with firearms, whereas someone who's willfully discharged a firearm before, there's not such a disconnect there. And I did want to point out one other thing before my time is up. We're dealing here with 4B1.2. Application Note 1, I just quickly wanted to touch on this. Application Note 1 to 4B1.2 states, Crime of violence includes murder, manslaughter, kidnapping, aggravated assault, and goes through a list of different crimes. Notably, it includes manslaughter. And so while the government is not arguing that the Begay analysis applies to this case, we believe that purposeful, violent, aggressive, that is the test. However, there is an argument that that application note in 4B1.2 broadens the scope, and so the Court would have even more flexibility than it would if it were interpreting violent felony under the ACCA. Another thing in Application Note 1. However, the 4B1.2a, the note, says, Other offenses are crimes of violence if the conduct set forth in the count was of which the deed was convicted by its nature presented a serious potential risk. So we're still down to conduct and risk even under the note that we're also subject to under Begay. Isn't that correct? That is correct, and I don't think there's any question here that this crime does pose exactly that risk. Let me ask you one more question, and my other one, which I think is somewhat nervous. Because everybody seems to suggest that the potential risk of injury is there, we don't have to worry about that, and we're talking about the conduct. What do I do with our case that suggests that the, as I understand it, the higher crime under 246 is not a crime of violence, and a lesser included crime of 246.3, you're now suggesting, merits crime of violence? Yes, Your Honor. I believe that's the Nevarez-Gomez case. It is. Okay. My reading of that case is the court was interpreting Section 246 and whether or not it's a crime of violence under 2L1.2. But the standard is the same under 2L. My understanding, and maybe I'm wrong about this, but my understanding was that the court was particularly looking at whether it was an offense that has an element, the use, attempted use, or threatened use of physical force against the person of another. It didn't have an otherwise clause. There was no focus on the outcome of the crime. So you're saying use? Yes, against the person of another. So there was more of a link between purposeful and violent aggression. It's of some concern to me, trying to be consistent, that we not say that a crime of violence occurs in a lesser included crime of one that isn't a crime of violence. And I believe that that case is distinguishable because of the particular definition of crime of violence that the court was looking at there. I think you're right in that the consequence of the offense itself creates a risk of physical injury. And that's why it's a crime. But I think it's important to note that the statute does not require the actor to purposefully create that situation. And the legislative history shows us that the firing of the gun is intentional, but it's actually aimless. It's done in the air. Another example of that would be someone who goes hunting in a place where they don't usually go, and they're not aware that there are bird watchers, for example, there, and intentionally fires his firearm, whereas a reasonable person who goes to that park often would know that there are other people there and that intentionally discharging a firearm would possibly create a risk of injury. And so I just wanted to address that question. As to Your Honor's question, Judge Schroeder, the other circuits did not feel that simply because an offense required a use of a firearm, whether it be recklessly discharged or intentionally discharged, that the offender would later pull the trigger in those six circuits. And I submit. Thank you, Your Honor. The case just argued is submitted for decision.
judges: Schroeder, Fisher, Smith N. R.